**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

GOKHAN ERDEMIR,                                         **18-cv-06103 (LDH)(AYS)**

        Plaintiff,

    -against-

ALLSTATE MARBLE & GRANITE,
KITCHENS AND BATHS INC. d/b/a
BELLAGIO KITCHENS & BATHS,
SERHAT SOYKAN, and DENIZ SOYKAN,

        Defendants.

-----------------------------------------------------------X

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

Respectfully submitted by,

THE NHG LAW GROUP, P.C.

_____

By: Keith E. Williams, Esq.
*Attorneys for the Plaintiff*
4242 Merrick Road
Massapequa, New York 11758
Tel: 516.228.5100
keith@nhglaw.com

i

## TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................................v

I.      TRIAL SUMMATION .................................................................................................1

II.     PROPOSED FINDINGS OF FACT ...........................................................................5

        A.      Corporate Defendant Allstate Marble & Granite, Kitchens
                and Baths Inc. d/b/a Bellagio Kitchens & Baths................................................5

        B.      Individual Defendant Serhat Soykan ...................................................................5

        C.      Individual Defendant Deniz Soykan ....................................................................7

        D.      Plaintiff Gokhan Erdemir.....................................................................................8

                1.      Dates of Employment ..............................................................................8

                2.      Job Duties and Responsibilities ..............................................................9

                3.      Work Schedule.........................................................................................9

                4.      Payroll ...................................................................................................11

                5.      Unpaid Wages ........................................................................................13

                6.      Executive Exemption .............................................................................14

        E.      Interstate Commerce and Gross Revenue Threshold.........................................15

        F.      Defendants' Willfulness and Lack of Good Faith .............................................15

III.    PROPOSED CONCLUSIONS OF LAW ...............................................................16

        A.      Jurisdictional Requirements................................................................................16

        B.      Statute of Limitations for the FLSA and the NYLL .........................................16

        C.      Failure to Pay Overtime under the FLSA ..........................................................17

                1.      Allstate Was an Enterprise Engaged in Commerce or
                        in the Production of Goods for Commerce and Its
                        Gross Volume of Sales Made or Business Done Was
                        Not Less than $500,000.00 in the Years 2015, 2016,
                        2017, and 2018.......................................................................................17

2.    Employee – Employer Relationship: Plaintiff Was an "Employee" of Allstate within the Meaning of the FLSA ................................................................... 18

3.    Plaintiff Worked in Excess of Forty (40) Hours per Week Throughout His Employment and Never Received Overtime Compensation ........................ 20

D.    Failure to Pay Overtime under the NYLL ........................................ 23

E.    Overtime Damages ........................................................................ 26

1.    Overtime Damages for 2012-2013 ........................................ 26

2.    Overtime Damages for 2015-2018 ........................................ 27

F.    Defendants' Executive Exemption Defense under the FLSA and the NYLL ................................................................................ 29

1.    Salary Basis Test .................................................................... 30

2.    Management ............................................................................ 32

3.    Directing the Work of Two or More Employees .................... 34

4.    Hiring and Firing or Recommendations Given Particular Weight ................................................................... 35

G.    Failure to Pay Regular Wages under the NYLL ............................... 36

H.    Failure to Provide Wage Notices and Wage Statements under the NYLL .............................................................................. 36

1.    Wage Notice Requirements under NYLL Section 195(1) .................................................................................... 36

2.    Wage Statement Requirements under NYLL Section 195(3) .................................................................................... 37

3.    Defendants' Recordkeeping Violations .................................. 37

I.    The Individual Defendants Are Personally Liable under the FLSA and the NYLL ...................................................................... 38

J.    Plaintiff Is Entitled to Liquidated Damages under the NYLL .......... 39

K.    Plaintiff Is Entitled to Pre- and Post-Judgment Interest ................... 41

L.    Plaintiff Will Be Entitled to an Automatic Fifteen Percent (15%) Increase with Respect to Any Damages Not Paid within the Later of Ninety (90) Days Following the Issuance of Judgment or the Expiration of the Time to Appeal Pursuant to the under the NYLL ........................................................ 43

M.    Plaintiff Will Be Entitled to Reasonable Attorneys' Fees and Costs ........................................................................................................ 43

**IV.    CONCLUSION** ........................................................................................**43**

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) .................................. 20, 21

*Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184 (S.D.N.Y. 2003) ........................................................................................................................ 24

*Awan v. Durrani*, 14-cv-04562 (SIL), 2015 WL 4000139 (E.D.N.Y. July 1, 2015) ........................................................................................................................ 29

*Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008) ............................ 19

*Begum v. Ariba Discount, Inc.*, 12-cv-06620 (DLC), 2015 WL 223780 (S.D.N.Y. Jan. 16, 2015) ................................................................................... 39, 41

*Bozdogan v. 23 Ludlam Fuel, Inc.*, 16-cv-01053 (JMW), 2022 WL 4273851 (E.D.N.Y. Sept. 15, 2022) ................................................................... 19, 20, 38

*Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988) ................................................... 18

*Cabrera v. Canela*, 412 F. Supp. 3d 167 (E.D.N.Y. March 29, 2019) ..................................... 19

*Campos v. Lemay*, 05-cv-02089 (LTS)(FM), 2007 WL 1344344 (S.D.N.Y. May 7, 2007) .................................................................................................... 24

*Canelas v. World Pizza, Inc.*, 14-cv-07748 (ER), 2017 WL 1233998 (S.D.N.Y. Mar. 31, 2017) ............................................................................... 25

*Carhuapoma v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 11-cv-08670 (JPO)(RLE), 2013 WL 1285295 (S.D.N.Y. Mar. 29, 2013) .............................. 34

*Castillo v. RV Transp., Inc.*, 15-cv-00527 (LGS), 2016 WL 1417848 (S.D.N.Y. Apr. 11, 2016) ................................................................................ 40

*Cesario v. BNI Constr., Inc.*, 07-cv-08545 (LLS)(GWG), 2008 WL 5210209 (S.D.N.Y. Dec. 15, 2008) .......................................................... 39, 40

*Chen v. New Fresco Tortillas Taco LLC*, 15-cv-02158 (RA)(AJP), 2015 WL 5710320 (S.D.N.Y. Sept. 25, 2015) ....................................................... 37

*Clougher v. Home Depot, U.S.A., Inc.*, 696 F. Supp. 2d 285 (E.D.N.Y. 2010) ........................ 33

*Conway v. Icahn & Co.*, 16 F.3d 504 (2d Cir. 1994) .............................................................. 42

*Corning Glass Works v. Brennan*, 417 U.S. 188 (1974) ......................................................... 29

*Coulibaly v. Millennium Super Car Wash, Inc.*, 12-cv-04760 (CBA)(CLP),
    2013 WL 6021668 (E.D.N.Y. Nov. 13, 2013) ................................................................ 42

*Donovan v. Agnew*, 712 F.2d 1509 (1st Cir. 1983) ................................................................ 18, 38

*E. Coast Indus., Inc. v. Becconsall*, 301 N.Y.S.2d 778 (N.Y. Dist. Ct. 1969) .......................... 25

*Elghourab v. Vista JFK, LLC*, 17-cv-00911 (ARR)(ST), 2019 WL 2431905
    (E.D.N.Y. June 11, 2019), *aff'd*, 818 F. App'x 63 (2d Cir. 2020) ......... 30, 33, 34, 40, 41

*Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19 (E.D.N.Y.
    2015) ............................................................................................................... 23, 40, 41

*Fernandez v. Kinray, Inc.*, 406 F. Supp. 3d 256 (E.D.N.Y. 2018) ..................................... 18, 19

*Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481 (S.D.N.Y. 2017), *aff'd*,
    752 F. App'x 33 (2d Cir. 2018) ................................................................................... 25

*Garcia-Devargas v. Maino*, 15-cv-02285 (GBD)(JLC), 2017 WL 129123
    (S.D.N.Y. Jan. 13, 2017) (*report and recommendation*) .............................................. 40

*Goldberg v. Whitaker*, 366 U.S. 28 (1961) ............................................................................. 19

*Granados v. Traffic Bar & Rest.*, 13-cv-00500 (TPG)(JCF), 2016 WL
    7410725 (S.D.N.Y. Dec. 21, 2016) .............................................................................. 40

*Hart v. Rick's Cabaret Intern., Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013) ..................... 24, 25

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999) ........................................ 18, 19

*Hernandez v. Bella Notte of Syosset Inc.*, 22-cv-01647 (JMA)(AYS), 2022
    WL 3912574 (E.D.N.Y. Aug. 31, 2022) ............................................................ 41, 42, 43

*Hernandez v. NJK Contractors, Inc.*, 09-cv-04812 (RER), 2015 WL
    1966355 (E.D.N.Y. May 1, 2015) ............................................................................... 42

*Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441 (E.D.N.Y.2009) ........................... 17

*Jemine v. Dennis*, 901 F. Supp. 2d 365 (2d Cir. 2012) .......................................................... 21

*Jibowu v. Target Corporation*, 492 F. Supp. 3d 87 (E.D.N.Y. Sept. 30,
    2020) ............................................................................................................................ 30

*Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903 (E.D. La. 2009) .................................. 33

*Kalloo v. Unlimited Mech. Co. of NY, Inc.*, 977 F. Supp. 2d 187 (E.D.N.Y.
    2013) ............................................................................................................................ 38

*Khurana v. JMP USA, Inc.*, 14-cv-04448 (SIL), 2017 WL 1251102 (E.D.N.Y. Apr. 5, 2017)..................................................................38, 41, 43

*Kinney v. Artist & Brand Agency LLC*, 13-cv-08864 (LAK)(DF), 2015 WL 10714080 (S.D.N.Y. Nov. 25, 2015), *report and recommendation adopted*, 13-cv-08864 (LAK), 2016 WL 1643876 (S.D.N.Y. Apr. 22, 2016) ........................................................................................................24

*Lauria v. Heffernan*, 607 F. Supp. 2d 403 (E.D.N.Y. 2009) .....................................24

*Maldonado v. La Nueva Rampa, Inc.*, 10-cv-08195 (LLS)(JLC), 2012 WL 1669341 (S.D.N.Y. May 14, 2012)...............................................................42

*Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508 (S.D.N.Y. 2013) ...........29, 30

*McGuiggan v. CPC Intern.*, 84 F. Supp. 2d 470 (S.D.N.Y. 2000) ...........................19

*Morales v. Mw Bronx, Inc.*, 15-cv-06296 (TPG), 2016 WL 4084159 (S.D.N.Y. Aug. 1, 2016) ......................................................................................40

*Murphy v. ERA United Realty,* 251 A.D.2d 469 (2d Dep't 1998) ............................25

*Padilla v. Manlapaz*, 643 F. Supp. 2d 302 (E.D.N.Y. 2009)....................................38

*Padilla v. Sheldon Rabin, M.D., P.C.*, 176 F. Supp. 3d 290 (E.D.N.Y. Apr. 6, 2016) ......................................................................................................31

*Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554 (2d Cir. 2012)................29, 30

*Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58 (2d Cir. 1997).......................40

*Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381 (E.D.N.Y. 2007) ...............21

*Rodriguez v. Ridge Pizza Inc.*, 16-cv-00254 (DRH)(AKT), 2018 WL 1335358 (E.D.N.Y. Mar. 15, 2018) .............................................................23

*Schwind v. EW & Associates, Inc.*, 357 F. Supp. 2d 691 (S.D.N.Y. 2005) ..............19

*Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380 (E.D.N.Y. 2013) .............................17

*Tackie v. Keff Enterprises LLC*, 14-cv-02074 (JPO), 2014 WL 4626229 (S.D.N.Y. Sept. 16, 2014)................................................................................42

*Tacuri v. Nithin Constr. Co.*, 14-cv-02908 (CBA)(RER), 2015 WL 790060 (E.D.N.Y. Feb. 24, 2015)..................................................................36

*Thomas v. iStar Fin., Inc.*, 652 F.3d 141 (2d Cir. 2011)..........................................42

*United States v. Rosenwasser*, 323 U.S. 360 (1945).................................................18

*Vega v. K & C Interior Constr. Corp.*, 18-cv-00182 (ARR)(RER), 2018 WL 4376486 (E.D.N.Y. Aug. 28, 2018), *report and recommendation adopted*, 18-cv-00182 (ARR)(RER), 2018 WL 4374911 (E.D.N.Y. Sept. 13, 2018) ................................................................................................ 36

*Vysovsky v. Glassman*, 01-cv-02531 (LMM), 2007 WL 3130562 (S.D.N.Y. Oct. 23, 2007) .............................................................................................. 25

*Young v. Cooper Cameron Corp.*, 586 F.3d 201 (2d Cir. 2009) ............................ 16

*Zheng v. Liberty Apparel Company, Inc.*, 355 F.3d 61 (2d Cir. 2003) ................ 18, 29

*Zhong v. Zijun Mo*, 10-cv-00806 (RER), 2012 WL 2923292 (E.D.N.Y. Jul. 18, 2012) ................................................................................................... 24

*Zubair v. EnTech Eng'g, P.C.*, 900 F. Supp. 2d 355 (S.D.N.Y. 2012) ................... 40

## **Statutes**

28 U.S.C. § 1331 ................................................................................................ 16

28 U.S.C. § 1367 ................................................................................................ 16

28 U.S.C. § 1961 ................................................................................................ 43

28 U.S.C. § 1961(a) ........................................................................................... 43

28 U.S.C. § 1961(b) ........................................................................................... 43

29 U.S.C. § 203(d) ............................................................................................. 18

29 U.S.C. § 203(e)(1) ......................................................................................... 18

29 U.S.C. § 203(g) ............................................................................................. 18

29 U.S.C. § 203(s)(1)(A) ..................................................................................... 18

29 U.S.C. § 207 ................................................................................................. 20

29 U.S.C. § 207(a)(1) ............................................................................... 17, 20, 29

29 U.S.C. § 211(c) ............................................................................................. 20

29 U.S.C. § 213(a)(1) ......................................................................................... 29

29 U.S.C. § 216(b) ........................................................................................ 39, 43

29 U.S.C. § 255(a) ............................................................................................. 16

29 U.S.C. § 260 ........................................................................................................................... 39

N.Y. Lab. Law § 190(2) .............................................................................................................. 24

N.Y. Lab. Law § 190(3) .............................................................................................................. 24

N.Y. Lab. Law § 191(1) .............................................................................................................. 36

N.Y. Lab. Law § 191(3) .............................................................................................................. 36

N.Y. Lab. Law § 195(1)(a) .......................................................................................................... 36

N.Y. Lab. Law § 195(3) .............................................................................................................. 37

N.Y. Lab. Law § 196–a(a) .......................................................................................................... 25

N.Y. Lab. Law § 198 ................................................................................................................... 36

N.Y. Lab. Law § 198(1-a) ........................................................................................................... 40

N.Y. Lab. Law § 198(1-b) ........................................................................................................... 37

N.Y. Lab. Law § 198(1-b), eff. April 9, 2011 to February 26, 2015 ........................................ 37

N.Y. Lab. Law § 198(1-d) ........................................................................................................... 37

N.Y. Lab. Law § 198(1-d), eff. April 9, 2011 to February 26, 2015 ........................................ 37

N.Y. Lab. Law § 198(3) .............................................................................................................. 17

N.Y. Lab. Law § 198(4) .............................................................................................................. 43

N.Y. Lab. Law § 2(7) .................................................................................................................. 24

N.Y. Lab. Law § 663(1) .............................................................................................................. 43

N.Y. Lab. Law § 663(3) .............................................................................................................. 17

N.Y. Lab. Law § 663(4) .............................................................................................................. 43

N.Y. Lab. Law §§ 650 *et seq.* .................................................................................................. 25

**Rules**

N.Y. C.P.L.R. § 5001 .................................................................................................................. 42

N.Y. C.P.L.R. § 5001(b) ............................................................................................................. 42

N.Y. C.P.L.R. § 5004 .................................................................................................................. 42

## Regulations

12 N.Y.C.R.R. § 142-2.2 ................................................................................ 25, 36

12 N.Y.C.R.R. § 142-2.6 ...................................................................................... 20

29 C.F.R. § 541 ...................................................................................................... 30

29 C.F.R. § 541.100(a) .......................................................................................... 30

29 C.F.R. § 541.100(a)(1) ...................................................................................... 30

29 C.F.R. § 541.100(a)(3) ...................................................................................... 35

29 C.F.R. § 541.100(a)(4) ...................................................................................... 35

29 C.F.R. § 541.102 ............................................................................................... 32

29 C.F.R. § 541.602(a) .......................................................................................... 31

29 C.F.R. § 541.700(a) ..................................................................................... 32, 33

29 C.F.R. § 778.103 ............................................................................................... 26

29 C.F.R. § 778.107 ............................................................................................... 26

29 C.F.R. § 778.109 ............................................................................................... 26

29 C.F.R. § 778.112 .......................................................................................... 20, 26

29 C.F.R. § 778.115 ............................................................................................... 26

## Other Authorities

U.S. Dep't of Labor, Fact Sheet #17B: Exemption for Executive Employees
        Under the Fair Labor Standards Act (FLSA) (July 2008) ............................. 35

Pursuant to Honorable Judge LaShann DeArcy Hall's Minute Entry and Order, dated January 19, 2023, Plaintiff, GOKHAN ERDEMIR ("Plaintiff"), by and through his attorneys of record, THE NHG LAW GROUP, P.C., respectfully submits this Post-Trial Proposed Findings of Fact and Conclusions of Law.

## I.   TRIAL SUMMATION

As will be discussed in further detail below, the evidence presented at the trial of this matter demonstrates that Plaintiff met his burden to establish that Defendants, ALLSTATE MARBLE & GRANITE, KITCHENS AND BATHS INC. d/b/a BELLAGIO KITCHENS & BATHS ("Allstate"), SERHAT SOYKAN ("Serhat Soykan"), and DENIZ SOYKAN ("Deniz Soykan") (collectively, "Defendants"), willfully violated the applicable provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Sections 201 *et seq.*, the New York Labor Law ("NYLL"), Articles 6 and 19, and Part 142 of Title 12 of the Official Compilation of Codes, Rules, and Regulations of the State of New York ("N.Y.C.R.R." or the "N.Y. Regulations") by (i) failing to pay Plaintiff overtime compensation for any of the hours he worked in excess of forty (40) each week, (ii) giving Plaintiff payroll checks that bounced due to insufficient funds and failing to reimburse him, (iii) refusing to pay Plaintiff his cash portion of wages during the final ten (10) weeks of his employment, (iv) refusing to pay Plaintiff any wages for the final ten (10) days of his employment; and, (v) failing to provide Plaintiff with wage notices and accurate wage statements.

The evidence also established that Plaintiff was not, as Defendants disingenuously contend, a shop manager who was exempt from the overtime provisions of the federal and state wage and hour laws under the executive exemption.

As this Court readily witnessed, Plaintiff is a simple, hard-working man. Every day he went to work and spent his time cutting, fabricating, and polishing marble, granite, and other stones in Allstate's workshop to be installed as countertops at Allstate's customers' homes. On occasion,

Plaintiff even went to the customers' homes to install the countertops himself. Despite routinely working beyond forty (40) hours nearly every week of his employment, Defendants never paid him overtime. Additionally, several of Plaintiff's paychecks bounced when he tried to deposit them into his bank account. Plaintiff incurred fees as a result of these checks bouncing. Defendants never reimbursed him the amount of the checks or the fees associated with them. Defendants outright refused to pay Plaintiff his cash wages during the final ten (10) weeks of his employment and refused to pay him any wages for his final ten (10) days. Adding insult to injury, Deniz Soykan fired Plaintiff when he complained about the bounced checks and his wages not being paid.

During trial, the Court heard credible testimony from Plaintiff regarding his employment dates, the hours he worked, the pay rates he earned, the wages he received (and the wages he was denied), and the records Defendants maintained relating to timekeeping and payroll. During Plaintiff's first employment – 2012 through 2013 – it is uncontested that Plaintiff was paid a daily rate of pay each week. To calculate his wages, Defendants simply multiplied the number of days Plaintiff worked in the week by his daily rate of pay, paid a portion on a check, and gave him the rest in cash. Defendants admittedly failed to maintain any time records demonstrating Plaintiff's start and end times of each shift during this time period.

During Plaintiff's second employment – 2015 through 2018 – Defendants maintained a time clock to record Plaintiff's work hours (Exhibit 4); however, there were days that Plaintiff did not use the time clock because he worked outside of the workshop at customers' homes. Instead, as Plaintiff testified, he reported his time to either Deniz Soykan or Serhat Soykan. However, there is no evidence that Defendants maintained a record of that reported time. During this employment period, Defendants did maintain records reflecting the manner in which Plaintiff's wages were calculated each week (Exhibits 5 and 6). These pay records indicate that Plaintiff was paid a

combination of a daily and an hourly rate. These records generally indicate his total weekly wages, which are instrumental in calculating Plaintiff's damages, which will be explained in detail below and in his accompanying Calculation of Damages.

Throughout this litigation, Defendants have maintained that Plaintiff was an exempt shop manager who was in charge of managing Allstate's workshop and supervising its other employees. Their position is simply not credible or supported by fact in any way. At trial, Defendants did not call a single witness to testify to any substantive examples of how Plaintiff directed the work of other employees or what managerial duties Plaintiff primarily performed. In fact, after being admonished by the Court at the conclusion of the first day's proceedings for submitting a false affidavit in an attempt to adjourn the trial dates, Serhat Soykan instead decided not to attend the second day of trial rather than testify in his own defense. His absence speaks volumes. Putting that aside, there is not one document in evidence suggesting that Plaintiff performed even a single managerial duty, let alone that he performed managerial duties to the extent that management could be considered his <u>primary</u> duty.

Importantly, the Court does not even need to analyze Plaintiff's job duties to determine whether he was an exempt manager. Instead, the Court can simply look to the manner in which Plaintiff was paid every week. The evidence submitted at trial conclusively demonstrates that Plaintiff was paid a daily rate of pay during his first employment period with Allstate, and then, after he was rehired, was paid a mix of daily and hourly rates that resulted in a gross wage that varied on a week-to-week basis. Defendants have admitted that he was paid in this manner. Thus, as a matter of law, Plaintiff did not earn a guaranteed salary, which is a required element of the executive exemption. This is further confirmed by the payroll records maintained by Defendants (*i.e.*, Exhibits 5 and 6), which are replete with calculations using daily and hourly rates of pay. The

evidence proves that Defendants calculated Plaintiff's pay each week by multiplying his daily rate by the number of weekdays he worked and then adding his evening and Saturday hours multiplied by his hourly rate. And while Deniz Soykan made every attempt to suggest that her and her ex-husband's handwriting was not contained in those pay records, she repeatedly acknowledged that she testified in the affirmative at her deposition. Indeed, Deniz Soykan was impeached no less than fifteen (15) separate times because she refused to positively identify her and Serhat Soykan's handwriting during her trial testimony.

The Court witnessed first-hand the manner in which Deniz Soykan and Serhat Soykan conduct themselves. They clearly do not care about the truth, routinely lying about employment records and, worse, lying to the Court about the events leading up to the trial. They evidently do not care about the Court's time, arriving hours late on the first day of trial and not bothering to attend the second day.[1] They clearly did not care about Plaintiff's time, refusing to properly pay him for it as required by federal and state law.

Based on the evidence presented at trial, it is unquestionably clear that Plaintiff met his burden of proof necessary to establish his claims for unpaid overtime, unpaid regular wages, and wage notice and statement violations. It is even more clear that Defendants utterly failed to proffer any evidence that Plaintiff was an exempt employee. For the reasons discussed herein, Plaintiff is seeking unpaid overtime, unpaid regular wages, liquidated damages, recordkeeping penalties, pre- and post-judgment interest, and his attorneys' fees and costs incurred in prosecuting this action. In other words, Plaintiff seeks a fair day's pay for a fair day's work.

---

[1] As a result of Serhat Soykan's failure to appear and provide testimony at trial, the Court ruled that Plaintiff may designate portions of Serhat Soykan's deposition testimony to support his claims. The Court further ruled that Serhat Soykan could not cross-designate his deposition testimony for any reason. To the extent Defendants cite to Serhat Soykan's deposition transcript, the Court should respectfully decline to consider it. Ex. 12 at 212:24-213:22.

## II.    PROPOSED FINDINGS OF FACT

### A.    Corporate Defendant Allstate Marble & Granite, Kitchens and Baths Inc. d/b/a Bellagio Kitchens & Baths

Allstate Marble & Granite, Kitchens and Baths Inc. is the legal name of the business that employed Plaintiff and it does business as Bellagio Kitchens & Baths.[2] Allstate was formed in 2011 and has continued to do business since then.[3] Allstate is located at 791 Middle Country Road, St. James, New York 11780.[4] Allstate is in the business of remodeling kitchens and baths, constructing extensions and dormers, and finishing basements, including the fabrication of stone countertops.[5] The Allstate location in St. James contains a showroom and a workshop.[6] The main purpose of the workshop is to cut, fabricate, and polish the stone that Allstate supplies to its customers.[7] The workshop hours are Monday through Saturday from 8:00 a.m. until 4:30 p.m.; it is closed on Sunday.[8] The busy season for Allstate is June, July, August, and September.[9]

### B.    Individual Defendant Serhat Soykan

Serhat Soykan is an owner and the President of Allstate.[10] He is a highly educated businessman who obtained a master's degree from SUNY Maritime in 1996.[11] Serhat Soykan exercised operation control over Allstate, controlled significant business functions of Allstate, and participated in running Allstate's daily operations.[12] He formed Allstate, was the individual who

---

[2] Ex. 10 at 8:3-8; Ex. 11 at 25:25-26:1, 150:13-14.
[3] Ex. 10 at 11:14-15, 11:24-12:2.
[4] Ex. 10 at 12:3-11; Ex. 11 at 29:3-4, 150:15-17.
[5] Ex. 10 at 26:25-27:5, 27:10-16; Ex. 11 at 153:22-154:1.
[6] Ex. 11 at 10-13.
[7] Ex. 10 at 94:22-95:3.
[8] Ex. 11 at 29:9-11, 29:21-22.
[9] Ex. 10 at 56:3-12; Ex. 11 at 32:16-18.
[10] Defendants' Answer [D.E. 6] at ¶¶ 6, 10; Ex. 10 at 7:24-8:2, 11:16-18, 11:22-23; Ex. 11 at 26:2-3, 126:5-13, 153:8-9.
[11] Ex. 10 at 6:25-7:8.
[12] Ex. 10 at 18:4-8; Defendants' Answer [D.E. 6] at ¶¶ 11, 12.

was in charge overall, including over the workshop, and was the self-described "mastermind" of the Allstate business.[13] In short, he was the boss.[14]

Serhat Soykan controlled multiple business functions of Allstate. He was responsible for reviewing the corporate income tax returns for accuracy and signing them before they were submitted to the IRS.[15] He was a signatory to Allstate's checking account.[16] He did all of Allstate's payroll up until either 2016 or 2017 when he hired a payroll company.[17] Serhat Soykan made determinations on how to pay Allstate's employees,[18] determined those employees' wages,[19] hired and fired employees,[20] determined Allstate's workshop hours,[21] supervised the shop workers,[22] directed the employees' job duties,[23] told shop workers what to do either in person or by text or phone call,[24] handled the workers' issues if something went wrong in the shop,[25] and disciplined employees.[26] Serhat Soykan was admittedly at the top of the corporate hierarchy and everyone else reported to him.[27]

---

[13] Ex. 10 at 27:20-24, 28:4-5; Ex. 11 at 29:23-24.
[14] Ex. 10 at 31:17-20.
[15] Ex. 10 at 48:5-10, 46:17-18.
[16] Ex. 10 at 74:13-19.
[17] Ex. 10 at 67:17-19, 68:25-69:3; Ex. 11 at 160:21-23. Serhat Soykan's testimony conflicts with the dates of Plaintiff's paystubs, which begin during pay period August 17, 2015 through August 23, 2015, which indicates that Allstate actually began using a payroll company as early as August 2015. *See* Ex. 3, P0070.
[18] Ex. 10 at 31:21-32:2.
[19] Ex. 10 at 32:3-4.
[20] Ex. 10 at 32:8-9, Ex. 11 at 92:18-19, 128:2-10.
[21] Ex. 10 at 75:10-13.
[22] Ex. 11 at 29:25-30:1.
[23] Ex. 11 at 92:13-14.
[24] Ex. 11 at 92:11-12, 136:11-14, 136:24-137:12. Serhat Soykan worked at both the Allstate workshop and on job sites. Ex. 11 at 160:12-14.
[25] Ex. 11 at 92:15-17.
[26] Ex. 11 at 92:8-10.
[27] Ex. 10 at 29:7-9.

As Serhat Soykan's control over Allstate related to Plaintiff, Serhat Soykan admitted that he participated in the management of Plaintiff's employment.[28] He hired Plaintiff,[29] determined how Plaintiff was paid,[30] determined the amounts Plaintiff was paid,[31] determined Plaintiff's daily and hourly pay rates,[32] determined that Plaintiff would receive part of his wages by check and part of his wages in cash,[33] determined his work schedule,[34] denied him breaks,[35] gave him his wages and receipts,[36] and disciplined Plaintiff by yelling at him.[37] Plaintiff, like the other shop workers, reported directly to Serhat Soykan.[38]

### C.    Individual Defendant Deniz Soykan

Deniz Soykan was married to Serhat Soykan from 2004 until at least December 2019.[39] Deniz Soykan was also an Allstate owner and employee from at least November 2012 until December 2019.[40] She was at the Allstate location on most days because she managed the showroom and its employees.[41] She was also in charge of the adjoining workshop when Serhat Soykan was not present.[42] She monitored the shop employees by watching them on cameras while she remained in the showroom,[43] directed the shop employees to do work,[44] and addressed

---

[28] Defendants' Answer [D.E. 6] at ¶ 13.
[29] Ex. 10 at 32:5-7, 55:2-3.
[30] Ex. 10 at 30:3-5.
[31] Ex. 10 at 29:23-30:2.
[32] Ex. 11 at 35:20-21, 62:24-25.
[33] Ex. 10 at 30:6-9, 30:22-31:7; Ex. 11 at 33:14-15.
[34] Ex. 11 at 31:13-15, 92:20-21.
[35] Ex. 11 at 32:3-4.
[36] Ex. 11 at 37:1; 38:9-10, 38:18-39:2, 39:8-9, 39:12-13, 40:24-41:1.
[37] Ex. 10 at 54:22-25.
[38] Ex. 11 at 92:22-23.
[39] Ex. 11 at 153:2-7.
[40] Ex. 10 at 70:23-25, 71:2-3; Ex. 11 at 26:2-3, 126:5-13, 151:9-13.
[41] Ex. 10 at 71:4-5; Ex. 11 at 93:20-21, 94:15-16, 153:20-21.
[42] Ex. 11 at 93:18-19.
[43] Ex. 11 at 160:3-11.
[44] Ex. 11 at 93:1-2, 93:3-4, 94:17-19.

employees' problems.[45] She further participated in the operation of the Allstate business by hiring and firing employees,[46] interviewing employees,[47] participating in calculating payroll and completing payroll records.[48] Deniz Soykan routinely told Plaintiff what to do, calculated and then gave him his weekly wages, gave him his check receipts, participated in Plaintiff's initial interview in 2012 and in the decision to hire him, participated in the decision to pay him partly in cash and partly by check, and notably fired him in 2018 when he complained that he was not being paid and that his payroll checks were bouncing.[49]

### D.    Plaintiff Gokhan Erdemir

#### 1.    Dates of Employment

Plaintiff was employed by Allstate during two (2) separate time periods.[50] The first was from mid-November 2012 until September 23, 2013.[51] Plaintiff resigned because he was not being paid overtime and because one of his payroll checks bounced.[52] The second was from April 1, 2015 until May 31, 2018.[53] Deniz Soykan fired Plaintiff after he complained that he was not being paid and that several of his payroll checks had bounced.[54]

---

[45] Ex. 11 at 92:15-17.

[46] Ex. 11 at 93:5-13, 94:20-25, 126:17-127:9.

[47] Ex. 11 at 93:14-17.

[48] Ex. 11 at 93:22-94:2.

[49] Ex. 11 at 26:14-23, 33:14-15, 37:1; 38:9-10, 39:3-7, 39:10-11, 91:22-92:3, 93:7-17, 94:20-25, 126:17-127:9, 127:11-25.

[50] Ex. 11 at 26:4-5, 162:24-163:4.

[51] Defendants' Answer [D.E. 6] at ¶¶ 20, 37; Ex. 10 at 20:15-22, 23:7-12, 33:9-21, 42:22-43:12; Ex. 11 at 26:6-8; Additionally, defense counsel represented that "It's not disputed that the plaintiff was employed by Allstate Marble and Granite from November 2012 through September '13, and, again, from April 1st [sic] until May 26, 2018." Ex. 11 at 10:18-21.

[52] Ex. 11 at 31:16-22.

[53] Defendants' Answer [D.E. 6] at ¶ 39; Ex. 4, Time Entry, dated May 31, 2018; Ex. 10 at 23:7-12; Ex. 11 at 10:18-21, 26:9-10, 43:12-20, 52:3-8.

[54] Ex. 11 at 91:22-92:3, 127:11-25.

### 2. Job Duties and Responsibilities

Plaintiff was a stonecutter,[55] fabricator,[56] polisher,[57] and, at times, installer.[58, 59] It was his job to cut stone, marble, and granite into a countertop design, fabricate them, polish them, and, if needed, install them in Allstate's customers' homes.[60] Plaintiff performed each of these job duties, about 95% of his daily work time, at the Allstate workshop or, when installing, at the customer's home.[61] Plaintiff knew how to do his job and could complete projects that were assigned to him.[62] His job duties did not differ between his first and second employment periods.[63]

### 3. Work Schedule

From mid-November 2012 through May 2013, Plaintiff worked Monday through Saturday from 8:00 a.m. until 6:00 p.m. (10 hours a day, 60 hours a week).[64] In June 2013, the beginning of the busy season, through the end of his employment in September 2013, Plaintiff worked Monday through Saturday from 8:00 a.m. until 11:00 p.m. (15 hours a day, 90 hours a week).[65] During his first employment, Plaintiff received bathroom breaks and rarely took other breaks.[66] He did not

---

[55] A stonecutter cuts the slab of raw stone into the pattern needed to fit the countertop design. Ex. 11 at 27:12-14.

[56] Fabricators cut the holes for the sink and faucet and cut the edges. Ex. 11 at 27:24-28:1, 28:16-18.

[57] Polishers polish the edge and face of the stone to remove scratches. Ex. 11 at 28:19-22.

[58] An installer brings the finished countertop to the customer's house and installs it. Ex. 11 at 27:21-23.

[59] Ex. 10 at 33:2-4; Ex. 11 at 27:7-8.

[60] Ex. 11 at 27:9-11.

[61] Ex. 11 at 28:23-29:2, 29:5-8, 153:12-17.

[62] Ex. 10 at 93:16-20; Ex. 11 at 136:11-23.

[63] Ex. 11 at 44:3-5.

[64] Ex. 11 at 30:14-25. Serhat Soykan did not believe Plaintiff had a general schedule: "His schedule is to get the job done. There's no set schedule for him. We tell him to open up the shop at eight o'clock and leave the shop four-thirty, six o'clock." Ex. 10 at 160:7-12.

[65] Ex. 11 at 31:1-12.

[66] Ex. 11 at 31:24-32:2.

take any time off or vacations during 2012 and 2013.[67] Defendants did not utilize a timekeeping system in 2012 and 2013, and they did not require Plaintiff to report his hours worked.[68]

      From April 1, 2015 through July 5, 2015, Plaintiff worked Monday through Saturday from 8:00 a.m. until between 6:00 and 6:30 p.m. (minimum 10 hours a day, minimum 60 hours a week).[69] Plaintiff's work hours were not recorded during this time.[70] Beginning on July 6, 2015, Plaintiff utilized a timeclock in Allstate's workshop.[71] From July 6, 2015 through the remainder of his employment, Plaintiff's hours are generally reflected in Allstate's timeclock records and are accurate, with one exception: the days Plaintiff worked at customers' homes.[72] Some of those daily entries are missing punch out times, and others are missing punch in and out times due to Plaintiff either leaving the customer's house at the end of the day and going straight home, rather than returning to the shop to punch out, or arriving at the customer's house in the morning without first going to the shop to punch in.[73] If Plaintiff reported directly to a customer's house in the morning, he arrived and began work at 8:00 a.m.[74] If he departed a customer's house in the evening, he completed work between 6:00 and 6:30 p.m., sometimes later.[75] Plaintiff reported these start and end times to Deniz Soykan or Serhat Soykan either at the end of the week or the very next day when he saw them.[76] Plaintiff occasionally took breaks during 2015 – 2018; his break time is

---

[67] Ex. 11 at 32:19-22.
[68] Ex. 10 at 36:19-24, 158:21-23; Ex. 11 at 33:2-3, 33:8-10.
[69] Ex. 11 at 44:6-12, 45:6-7, 21-24.
[70] Ex. 11 at 44:3-5.
[71] Ex. 4; Ex. 10 at 45:6-7, 45:12-14, 102:8-10; Ex. 11 at 44:13-45:2, 46:12-16, 163:23-25, 164:20-165:8.
[72] Ex. 4; Ex. 11 at 46:2-7, 46:17-23, 51:15-18.
[73] Ex. 4, Line Entry, dated July 17, 2015; Ex. 11 at 46:20-47:15, 48:9-23, 50:2-5.
[74] Ex. 11 at 50:16-21.
[75] Ex. 11 at 50:22-15.
[76] Ex. 11 at 50:6-15.

accurately reflected in his time records.[77] Plaintiff took one (1) week of vacation during this employment period, in late June 2017; his vacation week is reflected in his time and payroll records.[78]

### 4.     Payroll

Allstate's pay period was Monday through Sunday with payday on the following Tuesday.[79] Allstate always paid Plaintiff partly by check and partly in cash.[80] In 2012 and 2013, Plaintiff was paid a daily rate of pay.[81] From mid-November 2012 to December 9, 2012, Allstate paid Plaintiff $150.00 per day.[82] From December 10, 2012 to February 10, 2013, Allstate paid Plaintiff $130.00 per day.[83] From February 11, 2013 to September 23, 2013, Allstate paid Plaintiff $140.00 per day.[84] Plaintiff's weekly wages were determined by multiplying his daily rate by the number of days he worked during the week.[85] Allstate did not take into consideration the number of hours Plaintiff worked when calculating his wages in 2012 and 2013.[86]

In 2015 through 2018, Plaintiff was paid a mix of a daily rate and an hourly.[87] He was paid a daily rate for each day he worked Monday through Friday, and an hourly rate for his weekday

---

[77] *See e.g.*, Ex. 4, Line Entries, dated July 14, 2015, July 22, 2015, July 27, 2015; Ex. 11 at 53:10-13.

[78] Ex. 4, Gap between line entries, dated June 24, 2017 and July 3, 2017; Ex. 6, P0062, Line Entry July 4, 2017; Ex. 11 at 52:9-53:4.

[79] Ex. 10 at 69:24-70:19. Ex. 11 at 33:16-34:1, 63:4-7. Plaintiff's paystubs indicate the "Period Begin" (Monday), "Period End" (Sunday), and "Check Date" (Tuesday). *See* Ex. 3, P0070 through P0207.

[80] Ex. 11 at 33:11-13, 36:15-17, 40:13-23, 41:2-5; 63:1-3, 63:19-64:3, 163:6-16.

[81] Ex. 10 at 66:19-21.

[82] Ex. 11 at 34:2-11.

[83] Ex. 11 at 34:12-35:11.

[84] Ex. 11 at 35:12-19.

[85] Ex. 11 at 36:4-14, 41:2-5.

[86] Ex. 11 at 36:18-21.

[87] Ex. 11 at 53:14-24, 60:10-12.

evening hours and his Saturday hours.[88] Plaintiff's payroll records, which were used by Allstate to show how much employees received in check and cash (as well as expense reimbursements[89]), indicate his daily rate in the top-right corner and his hourly rates in the calculation for each weekly entry.[90, 91] The weekly payroll entries and calculations in these payroll records are consistent with the manner in which Plaintiff was paid each week throughout his second employment.[92] Neither Serhat Soykan nor Deniz Soykan explained to Plaintiff which hours were going to be counted for an hourly rate and which would be counted for the daily rate.[93]

From April 1, 2015 until July 3, 2016, Allstate paid Plaintiff $170.00 per day.[94] From July 4, 2016 until June 18, 2017, Allstate paid Plaintiff $180.00 per day.[95] From June 19, 2017 until September 17, 2017, Allstate paid Plaintiff $190.00 per day.[96] From September 18, 2017 until May 31, 2018, Allstate paid Plaintiff $200.00 per day.[97]

---

[88] Ex. 11 at 60:13-14. Other Allstate employees were also paid by a daily rate. *See* Ex. 6, P0041; Ex. 11 at 188:20-189:14.

[89] *See e.g.*, Ex. 6, P0046, Line Entry "11/29 – 12/5"; Ex. 11 at 75:5-16.

[90] Ex. 11 at 67:13-21, 68:1-2, 71:10-73:1, 73:11-76:2.

[91] Despite Deniz Soykan's best efforts to suggest that her handwriting was not contained in Allstate's payroll records, the fact that she was impeached repeatedly on the subject of whether she and Serhat Soykan calculated Plaintiff's wages clearly demonstrates that the calculations contained in the records are a true and accurate representation of the manner in which Plaintiff contends he was paid. *See* Ex. 5; Ex. 6; Ex. 11 at 165:9-167:9, 168:3-169:24, 170:11-172:22, 172:23-173:8, 173:19-25, 174:6-20, 177:17-178:24, 190:9-192:16, 193:4-201:1.

[92] Ex. 6, P0044-P0069; Ex. 11 at 81:16-82:4, 84:13-85:15.

[93] Ex. 11 at 79:17-80:6. As will be explained in more detail below, the breakdown between which hours were designated as daily rate as opposed to hourly rate is of no importance when calculating the regular rate as a "mixed rate" under the FLSA and its attendant regulations.

[94] Ex. 6, P0044-P0053 (Indicating a $170.00 daily rate at the top-right of each page); Ex. 11 at 53:25-54:2, 54:12-56:5.

[95] Ex. 6, P0053 (Indicating a daily payrate change from $170.00 to $180.00); Ex. 6, P0054-P0062 (Indicating a $180.00 daily rate at the top-right of each page); Ex. 11 at 56:6-57:23.

[96] Ex. 6, P0062 (Indicating a daily payrate change from $180.00 to $190.00); Ex. 6, P0063-P0064 (Indicating a $190.00 daily rate at the top-right of each page); Ex. 11 at 57:24-59:25.

[97] Ex. 6, P0065-P0069 (Indicating a $200.00 daily rate at the top-right of each page); Ex. 11 at 60:1-9.

From April 1, 2015 until July 2, 2017, Allstate paid Plaintiff $20.00 per hour for his evening and Saturday hours.[98] From July 3, 2017 until May 31, 2018, Allstate paid Plaintiff $20.00 per hour for his evening and Saturday hours.[99]

In 2015 through 2018, Allstate calculated Plaintiff's wages by multiplying his daily rate by the number of weekdays, multiplying his hourly rate by the number of evening and Saturday hours he worked, and then adding those amounts together.[100, 101]

### 5.    Unpaid Wages

Allstate never paid Plaintiff overtime compensation for any of the hours he worked above forty (40) each week.[102] Serhat Soykan did not care if Plaintiff worked seventy (70) hours a week because he considered him exempt from overtime.[103] It did not matter to him if Plaintiff worked forty, fifty, sixty hours a week.[104] Additionally, Plaintiff did not receive the cash portion of his weekly wages for the final ten (10) weeks of his employment.[105] He also did not receive any wages (cash or check) for the final ten (10) days of his employment.[106]

Allstate issued Plaintiff payroll checks that bounced for insufficient funds in 2013, 2016, and 2018.[107] These bounced checks included Check Number 423, dated September 20, 2013, in

---

[98] Ex. 11 at 60:15-20.
[99] Ex. 6, P0062-P0063 (Indicating an hourly rate increase from $20.00 to $25.00); Ex. 11 at 60:21-61:2, 61:14-62:23.
[100] *See e.g.*, Ex. 6, P0045-P0046; Ex. 11 at 71:10-73:1, 73:11-76:2, 175:8-12.
[101] *See e.g.*, Ex. 6, P0049; Ex. 11 at 82:9-84:12 (these calculations show that Plaintiff was paid less when he worked 4.5 days and 3.5 days, as opposed to when he was paid more during his 5-day workweeks).
[102] Ex. 11 at 36:22-24.
[103] Ex. 10 at 148:13-15, 149:24-150:4, 158:24-159:2.
[104] Ex. 10 at 149:24-151:9.
[105] Ex. 11 at 91:19-21.
[106] *Cf.* Ex. 3, P0207, Final Paystub, Period End May 20, 2018, with Ex. 4, Line Entry, dated May 31, 2018; Ex. 11 at 65:2-25.
[107] Ex. 10 at 204:17-20, 205:9-12; Ex. 11 at 41:11-23, 42:2-10, 85:17-19.

the amount of $340.00;[108] Check Number 10717, dated May 3, 2016, in the amount of $304.35;[109] Check Number 11414, dated January 9, 2018, in the amount of $410.90;[110] Check Number 11424, dated January 16, 2018, in the amount of $410.90;[111] and Check Number 11452, dated February 6, 2018, in the amount of $416.48.[112] Check Numbers 11414, 11424, and 11452 each incurred a $15.00 bank fee.[113] Plaintiff was not reimbursed for the check amounts or the fees that he incurred.[114]

### 6.   Executive Exemption

There is no evidence in the record demonstrating that Plaintiff qualifies for the executive exemption of the FLSA and the NYLL. As discussed above, Plaintiff was not paid a guaranteed weekly salary. In fact, at his deposition, Serhat Soykan first admitted that Plaintiff was paid daily,[115] then later admitted that he was an hourly employee, not salaried.[116] It is unsurprising that Allstate's payroll records, discussed in detail above, are replete with Plaintiff's daily and hourly rates. Plaintiff did not supervise anyone, no one reported to him, he did not have authority to hire or fire anyone, he did not participate in interviews, and no one at Allstate ever asked for his opinion as to whether someone should be hired of fired.[117] Plaintiff never disciplined anyone, never trained anyone, and never evaluated another employee's work performance.[118] Plaintiff did not handle employee complaints or grievances, did not set or adjust employee wages, and never apportioned

---

[108] Ex. 9, P0331; Ex. 11 at 42:8-10.
[109] Ex. 8, P0300; Ex. 11 at 86:19-87:8; *Cf.* Ex. 3, P0106.
[110] Ex. 8, P0298; Ex. 11 at 88:18-89:8; *Cf.* Ex. 3, P0188.
[111] Ex. 8, P0298; Ex. 11 at 88:18-89:8; *Cf.* Ex. 3, P0189.
[112] Ex. 8, P0299; Ex. 11 at 90:21-91:3; *Cf.* Ex. 3, P0192.
[113] Ex. 8, P0306, P0307; Ex. 11 at 87:11-13, 89:9-90:2, 91:4-13.
[114] Ex. 11 at 42:11-12, 85:20-21, 87:9-10, 90:3-7, 91:14-18.
[115] Ex. 10 at 66:19-21.
[116] Ex. 10 at 103:7-11.
[117] Ex. 10 at 32:20-25; Ex. 11 at 30:2-5, 95:1-12.
[118] Ex. 11 at 95:13-19.

or assigned work to other employees.[119] Plaintiff was not responsible for maintaining production or sales records, providing for the safety and security of other employees, planning and controlling budgets, monitoring or implementing legal compliance measures, or planning and organizing work projects.[120] He was not the shop manager, did not consider himself to be a shop manager, and was never referred to or introduced to anyone by Serhat Soykan as a shop manager or a supervisor.[121] Serhat Soykan even admitted that Plaintiff was not the shop manager during 2012 and 2013, and did not hire or fire anyone during that time.[122] Serhat Soykan never told Plaintiff that he was a salaried employee or that he was exempt from overtime.[123] Serhat Soykan gave Plaintiff business cards towards the end of his employment that indicated Plaintiff was a manager, but Plaintiff never used them because they did not reflect his true name, which Plaintiff found to be insulting.[124]

     **E.    Interstate Commerce and Gross Revenue Threshold**

The Parties have stipulated that during all relevant time periods of Plaintiff's employment, Allstate was an enterprise engaged in commerce or in the production of goods for commerce pursuant to the FLSA, 29 U.S.C. Section 203(s), and that its gross annual volume of sales made or business done was not less than $500,000.00 each year.[125]

     **F.    Defendants' Willfulness and Lack of Good Faith**

Serhat Soykan did not do any research into the FLSA or NYLL pertaining to paying wages to Allstate's employees.[126] He never did any research to determine what the requirements of the

---

[119] Ex. 11 at 95:20-96:3.
[120] Ex. 11 at 96:4-18.
[121] Ex. 10 at 32:20-25; Ex. 11 at 96:22-25, 97:1-6.
[122] Ex. 10 at 32:20-22. Serhat Soykan admitted that no one was fired at all during 2012 and 2013.
    *See* Ex. 10 at 78:18-24.
[123] Ex. 11 at 97:7-11.
[124] Ex. 11 at 97:12-98:12.
[125] *See* Final Pre-Trial Order [D.E. 22] at ¶ 8; *see also* Ex. 10 at 48:11-16; Ex. 11 at 9:19-10:10.
[126] Ex. 10 at 41:23-42:4.

FLSA or the NYLL were.[127] He was unaware of what a wage notice was prior to being sued and was unaware that Allstate was required to provide accurate paystubs to its employees.[128] In fact, Allstate never gave Plaintiff a single accurate paystub.[129]

Serhat Soykan and Deniz Soykan knowingly fabricated false employment records for Plaintiff that did not reflect his actual hours worked, the rates he was paid, and the amounts he earned each week throughout his two (2) employment periods.[130] Serhat Soykan even directed his subordinates to submit false information to the third-party payroll company Allstate used.[131]

## III.  PROPOSED CONCLUSIONS OF LAW

### A.  Jurisdictional Requirements

This Court has original subject matter jurisdiction over this action because it arises under a federal statute (*i.e.*, the FLSA). *See* 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the NYLL claims because they are so related to the FLSA claims that they form part of the same case or controversy. *See* 28 U.S.C. § 1367. The Court's jurisdiction is not in dispute.[132]

### B.  Statute of Limitations for the FLSA and the NYLL

The FLSA permits a plaintiff to recover wages within two (2) years after the claim accrues, unless the plaintiff can demonstrate that the employer's violations were willful, in which case the limitations period is extended to three (3) years. *See* 29 U.S.C. § 255(a). Willfulness, in this context, is found where, as here, an employer knowingly disregards its obligations under the FLSA. *See Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009). In contrast, the

---

[127] Ex. 10 at 42:14-21.
[128] Ex. 10 at 39:9-15, 116:20-24.
[129] Ex. 10 at 116:16-19, 117:10-13; Ex. 11 at 40:1-23.
[130] Ex. 1; Ex. 3; Ex. 7; Ex. 10 at 111:18-22, 112:3-6, 112:7-12; 115:15-18, 115:11-14, 116:4-8.
[131] Ex. 10 at 124:16-25.
[132] *See* Final Pre-Trial Order [D.E. 22] at ¶ 3; So-Ordered at Ex. 11 at 10:6-8.

NYLL establishes a six (6) year limitations period. *See* N.Y. Lab. Law § 198(3); N.Y. Lab. Law § 663(3).

Plaintiff filed this lawsuit on October 31, 2018. *See* D.E. 1. Thus, the FLSA statute of limitations covers Plaintiff's FLSA overtime claims from October 31, 2016 through the end of his employment, or from October 31, 2015 if the Court finds that Defendants' violations were willful. The NYLL statute of limitations, on the other hand, covers the entirety of Plaintiff's two (2) employment periods with Allstate, from commencement in mid-November 2012 through September 23, 2013 and again from April 1, 2015 through May 31, 2018.

### C.    Failure to Pay Overtime under the FLSA

To succeed on a FLSA overtime claim, a plaintiff must establish the following elements: (1) the employer was an enterprise engaged in commerce or in the production of goods for commerce; (2) the plaintiff is an "employee" within the meaning of the FLSA; and (3) that the plaintiff worked in excess of forty (40) hours in a given workweek and did not receive overtime compensation for such work. *See* 29 U.S.C. § 207(a)(1); *see also*, *Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 395 (E.D.N.Y. 2013) (citing *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 447 (E.D.N.Y.2009)).

### 1.    Allstate Was an Enterprise Engaged in Commerce or in the Production of Goods for Commerce and Its Gross Volume of Sales Made or Business Done Was Not Less than $500,000.00 in the Years 2015, 2016, 2017, and 2018

The FLSA defines "enterprise engaged in commerce or in the production of goods for commerce" as an enterprise that "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person[,] and … is an

enterprise whose annual gross volume of sales made or business done is not less than $500,000[.]" 29 U.S.C. § 203(s)(1)(A).

Here, the Parties have stipulated that during the relevant time period of Plaintiff's employment, Allstate was an enterprise engaged in commerce or in the production of goods for commerce pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Section 203(s), and that its gross annual volume of sales made or business done was not less than $500,000.00 each year.[133]

### 2. Employee – Employer Relationship: Plaintiff Was an "Employee" of Allstate within the Meaning of the FLSA

Under the FLSA, an "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g). This is "the broadest definition of employ that has ever been included in any one act." *Zheng v. Liberty Apparel Company, Inc.*, 355 F.3d 61, 69 (2d Cir. 2003) (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 (1945)). "The definition is necessarily a broad one in accordance with the remedial purpose of the Act." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058 (2d Cir. 1988).

Under the FLSA, an employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Fernandez v. Kinray, Inc.*, 406 F. Supp. 3d 256, 261 (E.D.N.Y. 2018) (quoting 29 U.S.C. § 203(d)). This definition has been interpreted expansively. *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983). "The overarching concern is whether the alleged employer possessed the power to control the workers in question." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). To that end, Courts look to the economic realities surrounding each particular case. *Donovan*, 712 F.2d at 1510. In determining employer status, "economic reality" prevails over technical common law concepts of agency. *Goldberg v.*

---

[133] *See* Final Pre-Trial Order [D.E. 22] at ¶ 8; *see also* Ex. 10 at 48:11-16; Ex. 11 at 9:19-10:10.

*Whitaker*, 366 U.S. 28, 33 (1961). Instead, "the inquiry focuses on the relationship between the purported employer and employee, asking how much authority the 'employer' exercised over the 'employees.'" *Fernandez*, 406 F. Supp. 3d at 261.

In utilizing the economic realities test, the Court may consider the following factors to determine employer status: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Cabrera v. Canela*, 412 F. Supp. 3d 167, 178 (E.D.N.Y. March 29, 2019) (quoting *Herman*, 172 F.3d at 139). "[N]o single factor of the test is dispositive. Instead, any determination regarding an alleged employment relationship must be based on the totality of the circumstances." *Fernandez*, 406 F. Supp. 3d at 261 (citing *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008)); *see also*, *Bozdogan v. 23 Ludlam Fuel, Inc.*, 16-cv-01053 (JMW), 2022 WL 4273851, at *7 (E.D.N.Y. Sept. 15, 2022) (citing *Herman*, 172 F.3d at 139). A totality of the circumstances must be examined "so as to avoid having the test confined to a narrow legalistic definition." *Id.* "The test is intended to ensure labor law protection is extended to all workers who are economically dependent on their employers by affording them protection as 'employees,' regardless of how their employers choose to define their status." *Schwind v. EW & Associates, Inc.*, 357 F. Supp. 2d 691, 700-01 (S.D.N.Y. 2005) (citing *McGuiggan v. CPC Intern.*, 84 F. Supp. 2d 470, 479 (S.D.N.Y. 2000)).

In the case at bar, it is uncontested that Allstate employed Plaintiff.[134] The evidence has established that Plaintiff was employed as a stone cutter, fabricator, polisher, and installer from

---

[134] Defense counsel represented to the Court that "It's not disputed that the plaintiff was employed by Allstate Marble and Granite from November 2012 through September '13, and, again, from April 1st [sic] until May 26, 2018." Ex. 11 at 10:18-21.

mid-November 2012 through September 23, 2013 and then again from April 1, 2015 through May 31, 2018. Allstate determined Plaintiff's wages and rates, determined the manner in which Plaintiff was paid, determined that he would be paid partly in cash and partly by check, and determined his schedule. Allstate had authority to hire and fire employees, including Plaintiff, and maintained (inaccurate) employment records for Plaintiff. These facts undoubtedly establish that Plaintiff was Allstate's employee as defined by the FLSA.

### 3.   Plaintiff Worked in Excess of Forty (40) Hours per Week Throughout His Employment and Never Received Overtime Compensation

The FLSA requires employers to provide employees with an overtime premium for all hours worked in excess of forty (40) hours per week. 29 U.S.C. § 207. Specifically, an employer is required to pay the employee one and one-half times his regular rate of pay when an employee's workweek exceeds forty (40) hours. *See Bozdogan*, 2022 WL 4273851, at *8 (citing to 29 U.S.C. § 207(a)(1), 29 C.F.R. § 778.112).

Both federal and New York law provide that employers are required to make, keep and preserve records of employee wages, hours, and employment conditions. *See* 29 U.S.C. § 211(c); 12 N.Y.C.R.R. § 142-2.6. When an employer has failed to maintain such adequate records,

> an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946). It is well-settled that where an employer has failed to rebut the plaintiff employee's recollection of hours worked, a plaintiff's

estimation is presumed correct. *Anderson*, 328 U.S. at 688; *Jemine v. Dennis*, 901 F. Supp. 2d 365, 376 (2d Cir. 2012).

In *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381 (E.D.N.Y. 2007), the district court held that, "[a]s defendants' records are inadequate, plaintiff's estimates may constitute sufficient evidence, and 'the employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records.'" *Id.* at 389 (quoting *Anderson*, 328 U.S. at 688). The United States Supreme Court has made clear that an employee is not to be penalized "by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act." *Anderson*, 328 U.S. at 687.

The evidence proffered at trial conclusively establishes that throughout Plaintiff's first employment period, Plaintiff worked more than forty (40) hours a week. From mid-November 2012 until the end of May 2013, Plaintiff worked Monday through Saturday from 8:00 a.m. until 6:00 p.m.: ten (10) hours a day, sixty (60) hours a week. Then, from June 2013 until the end of his employment on September 23, 2013, Plaintiff worked Monday through Saturday from 8:00 a.m. until 11:00 p.m.: fifteen (15) hours a day, ninety (90) hours a week. Plaintiff's credible trial testimony regarding the times that he worked each day of each week establishes that he worked in excess of forty (40) hours every week during his first employment period. It is undisputed that Defendants did not maintain any time records for this period of Plaintiff's employment. It was also proven that Allstate paid Plaintiff a daily rate of pay during this time, without regard to the number of hours Plaintiff worked each week. Plaintiff confirmed that Defendants did not pay him overtime

compensation at a rate of one and one-half times his regular rate of pay, and Serhat Soykan admitted that Plaintiff was never paid overtime because he was treated as an exempt employee.

The uncontroverted evidence presented at trial further establishes that Plaintiff was employed by Allstate again from April 1, 2015 until May 31, 2018. Plaintiff testified that from April 1, 2015 until July 5, 2015, he worked Monday through Saturday from 8:00 a.m. until between 6:00 p.m. and 6:30 p.m. It is undisputed that Plaintiff started punching in and out of his shifts on July 6, 2015, when he first received his punch code, and continued to do so until the end of his employment on May 31, 2018, as indicated in his timeclock records. These time records demonstrate that nearly every week of his second employment, Plaintiff worked in excess of forty (40) hours. The only inaccuracies in the time records stem from the days in which Plaintiff either left Allstate's workshop to perform an installation at a customer's house and did not return to the shop at the end of the day, or when he reported directly to a customer's house rather than the workshop in the morning. Instead of punching in or out using the timeclock, Plaintiff reported his shift times to either Deniz Soykan or Serhat Soykan. Plaintiff testified that when he reported to a customer's house in the morning, he usually arrived and began working at 8:00 a.m., and he usually completed his work around 6:00 p.m. or 6:30 p.m., but he sometimes worked later. These times are generally consistent with the timeclock records (perhaps even a bit more conservative). There is no evidence in the record to conclude Defendants maintained complete time records for the days Plaintiff worked at customers' houses. Other than those days worked outside of the shop, the time records accurately depict the start and end times of Plaintiff's daily shifts, the start and end times of the rare breaks he was afforded, and the single week of vacation he received over the course of nearly five (5) years of employment with Allstate.

Plaintiff's estimates of his time worked in the absence of records must be presumed correct. Defendants did not produce any evidence indicating the precise number of hours Plaintiff worked (a) during the entirety of his first employment period, (b) during the first three (3) months of his second employment period, or (c) on the days he began or ended his shifts outside of the workshop during his second period of employment. Nor did they produce any evidence negating the reasonableness of Plaintiff's estimates. In fact, Defendants did not dispute Plaintiff's testimony regarding his hours or even cross-examine him in any meaningful way regarding his weekly schedule or the number of hours that he recalled working on a daily and weekly basis. Thus, Defendants did not meet their burden of proof and Plaintiff's testimony must, therefore, be presumed correct.

It is undisputed that Plaintiff was never paid overtime compensation for those hours that he worked in excess of forty (40) each week. Instead, Serhat Soykan treated Plaintiff as an exempt employee who was not entitled to overtime pay, even though he never did any research to determine if Plaintiff was properly classified.

### D.   Failure to Pay Overtime under the NYLL

To establish an overtime claim under the NYLL, a plaintiff must establish that (1) he worked in excess of forty (40) hours in a given workweek without receiving overtime compensation; (2) he was an "employee" as defined in the statute; and (3) the defendant was an "employer" as defined by the statute. *Rodriguez v. Ridge Pizza Inc.*, 16-cv-00254 (DRH)(AKT), 2018 WL 1335358, at *5 (E.D.N.Y. Mar. 15, 2018) (citing *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 34 (E.D.N.Y. 2015)).

As a first note, "there is general support for giving the FLSA and the NYLL consistent interpretations . . . and . . . there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." *Kinney v. Artist &*

23

*Brand Agency LLC*, 13-cv-08864 (LAK)(DF), 2015 WL 10714080, at *12 (S.D.N.Y. Nov. 25, 2015), *report and recommendation adopted*, 13-cv-08864 (LAK), 2016 WL 1643876 (S.D.N.Y. Apr. 22, 2016). In fact, many courts have applied the federal economic reality test to determine whether an employment relationship exists under both the FLSA and the NYLL. *See Hart v. Rick's Cabaret Intern., Inc.*, 967 F. Supp. 2d 901, 922 (S.D.N.Y. 2013) (citing *Campos v. Lemay*, 05-cv-02089 (LTS)(FM), 2007 WL 1344344, at *4 (S.D.N.Y. May 7, 2007); *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 189–92 (S.D.N.Y. 2003); *Zhong v. Zijun Mo*, 10-cv-00806 (RER), 2012 WL 2923292, at *2 (E.D.N.Y. Jul. 18, 2012)); *see also Lauria v. Heffernan*, 607 F. Supp. 2d 403, 409 (E.D.N.Y. 2009) (in analyzing whether an employment relationship exists under NYLL § 190(3), "courts look to the 'economic reality' test set forth in *Herman v. RSR Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999).").

NYLL defines an "employee" as "any person employed for hire by an employer in any employment," N.Y. Lab. Law § 190(2). Under the NYLL, the term "employed" includes "permitted or suffered to work." N.Y. Lab. Law § 2(7). The NYLL defines "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." N.Y. Lab. Law § 190(3). Similar to the FLSA, under the NYLL, Courts must focus on "the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Hart*, 967 F. Supp. 2d at 923. Factors used to assess control under the NYLL common law test include: whether the worker (1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and, (5) was on a fixed schedule. *Id*. These factors are not exhaustive, however, and New York courts routinely consider other factors which demonstrate an employment relationship, including those factors applicable to the federal economic reality test.

*Id.* (citing *Murphy v. ERA United Realty,* 251 A.D.2d 469, 470–71 (2d Dep't 1998); *E. Coast Indus., Inc. v. Becconsall*, 301 N.Y.S.2d 778, 779–80 (N.Y. Dist. Ct. 1969); *Vysovsky v. Glassman*, 01-cv-02531 (LMM), 2007 WL 3130562, at *14 (S.D.N.Y. Oct. 23, 2007)).

Like the FLSA, the NYLL requires employers to provide employees with an overtime premium for all hours worked in excess of forty (40) hours per week. N.Y. Lab. Law §§ 650 *et seq.*; 12 N.Y.C.R.R. § 142-2.2. Specifically, an employer is required to pay the employee one and one-half times his regular rate of pay when an employee's workweek exceeds forty (40) hours. *See* 12 N.Y.C.R.R. § 142-2.2.

Also like the FLSA, an employee may satisfy his burden of proof by producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference; however, the standard under the NYLL is much stricter than under the FLSA. Under NYLL Section 196-a, "where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017), *aff'd*, 752 F. App'x 33 (2d Cir. 2018) (citing *Canelas v. World Pizza, Inc.*, 14-cv-07748 (ER), 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017) (quoting N.Y. Lab. Law § 196–a(a)). Therefore, "[b]y its terms, the NYLL—unlike the FLSA—does not permit an employer to discharge this burden by undermining the reasonableness of an employee's evidence that he was underpaid. *Id.*

Because the NYLL is typically applied in the same manner as the FLSA, for the same reasons stated above, Plaintiff is entitled to overtime compensation for all hours that he worked in excess of forty (40) each week.

### E.      Overtime Damages

For covered, non-exempt employees, "the employer must total all the hours worked by the employee for him in [a] workweek … and pay overtime compensation for each hour worked in excess of the [forty (40)] hours." 29 C.F.R. § 778.103. Overtime hours "must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed." 29 C.F.R. § 778.107. The "regular rate" is defined as a rate per hour. 29 C.F.R. § 778.109. It is determined by dividing an employee's total remuneration for the workweek by the total number of hours actually worked in that week. *Id.* If, for example, an employee is paid a daily rate, "without regard to the number of hours worked in the day, and if he receives no other form of compensation for services," as Plaintiff was during his first period of employment, "his regular rate is determined by totaling all the sums received at such day rates … in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek." 29 C.F.R. § 778.112. If, however, an employee is paid at differing rates during the same week, as Plaintiff was during his second employment period, "his regular rate for that week is the weighted average of such rates. That is, his total earnings … are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked." 29 C.F.R. § 778.115.

### 1.      Overtime Damages for 2012-2013

As discussed *supra*, during Plaintiff's first employment period – from mid-November 2012 until September 23, 2013 – Plaintiff worked six (6) ten-hour days for sixty (60) hours a week from mid-November 2012 until the end of May 2013 and six (6) fifteen-hour days for ninety (90) hours a week from June 2013 until September 23, 2013. Defendants paid Plaintiff a daily rate of pay for these hours at $150 a day (mid-November 2012 until December 9, 2012), $130 a day (from December 10, 2012 until February 10, 2013), and $140 a day (from February 11, 2013 to

September 23, 2013). Thus, for each week of his employment, Plaintiff's overtime can be calculated using the following steps:

a.    Number of days worked x daily rate = total weekly renumeration
b.    Total weekly renumeration / hours worked = regular rate
c.    Regular rate x 0.5 = overtime premium
d.    Overtime premium x overtime hours = overtime owed

For example, for the pay period November 30, 2012 to December 6, 2012, Plaintiff's overtime owed is as follows:

a.    6 days worked x $150 daily rate = $900 weekly renumeration
b.    $900 / 60 hours worked = $15.00 an hour regular rate
c.    $15.00 x 0.5 = $7.50 an hour overtime premium
d.    $7.50 x 20 overtime hours = $150.00 overtime owed

A detailed calculation of Plaintiff's damages owed for his 2012-2013 employment period is included in his accompanying Calculation of Damages using this formula.

## 2.    Overtime Damages for 2015-2018

As discussed *supra*, during Plaintiff's second employment period – from April 1, 2015 through May 31, 2018 – Plaintiff was paid a mix of hourly and daily rates. And with the exception of April 1, 2015 through July 5, 2015, his hours are generally reflected in his timesheets. Where the timesheets are deficient, however, Plaintiff's reasonable estimates of his shifts' start and end times can supplement the gaps in the time records. For example, the time records lack punch out times for days that Plaintiff worked at customers' houses and went directly home at the end of the day, rather than return to the shop to punch out. For these days, the time records can be supplemented using Plaintiff's credible testimony that he generally finished working at a customer's house between 6:00 and 6:30 p.m., and sometimes later.[135] The time records also lack punch records for days that Plaintiff reported directly to a customers' house, rather than going to

---

[135] For these days, Plaintiff uses the more conservative time of 6:00 p.m. in calculating his overtime owed.

the shop first to punch in. For these days, Plaintiff's time records can again be supplemented using his testimony that he generally started his work at a customer's house at 8:00 a.m. The days Plaintiff worked but did not punch in can be cross-referenced using the checkmarks next to each workday in the payroll records at Exhibits 5 and 6.[136] Importantly, while these payroll records tend to indicate the number of hours Plaintiff worked in the evenings and on Saturdays, this information is not relevant to Plaintiff's damage calculation. As Plaintiff testified, his evening and Saturday hours are already reflected in his punch clock records (Exhibit 4).[137] Because Plaintiff was paid a mixed rate during this time, and mixed rate calculations only necessitate knowing the total weekly renumeration (not the actual rates paid), the only relevant information in the payroll records that is needed to calculate Plaintiff's damages is his total wages paid each week. Thus, for each week of his employment during these years, Plaintiff's overtime owed can be calculated using the following steps:

   a. Total weekly renumeration / hours worked = weighted regular rate
   b. Weighted regular rate x 0.5 = overtime premium
   c. Overtime premium x overtime hours = overtime owed

 For example, for the pay period August 17, 2015 to August 23, 2015, Plaintiff's overtime owed is as follows:

   a. $960.00 total weekly renumeration[138] / 51.76 hours worked[139] =  $18.55 an hour weighted regular rate

---

[136] Again, Plaintiff takes the conservative approach in calculating his damages as it relates to this crosscheck. For those days that there are no punch times (in Exhibit 4) and no checkmark indication that he worked that particular day (in Exhibits 5 and 6), Plaintiff omits that day from his calculation.

[137] The number of hours in the payroll records (Exhibits 5 and 6) do not precisely match the number of hours recorded by the timeclock (Exhibit 4), suggesting that Defendants either rounded Plaintiff's hours or changed them without explanation when calculating his weekly pay.

[138] Ex. 6, P0044, payday August 25, 2015 (for pay period August 17, 2015 to August 23, 2015). This entry shows that Plaintiff was paid $850 for his daily rate and $110 for his hourly rate, for a total of $960.00.

[139] Ex. 4, line entries August 17, 2015 through August 21, 2015.

b.      $18.55 x 0.5 =  $9.28 an hour overtime premium

c.      $9.28 x 11.76 overtime hours =  $109.13 overtime owed

Plaintiff's damages owed for his 2015-2018 employment period is included in his detailed
Calculation of Damages using this formula. Plaintiff also provides detailed notes in his Calculation
of Damages that explain the origin of each data point used.

**F.      Defendants' Executive Exemption Defense under the FLSA and the NYLL**

Under the FLSA, employers are required to pay employees overtime compensation for all
time worked in excess of forty (40) hours per week, unless the employee falls under an enumerated
exemption. 29 U.S.C. § 207(a)(1). The employer bears the burden of demonstrating that an
employee falls under a specific exemption. *See Corning Glass Works v. Brennan*, 417 U.S. 188,
196–97 (1974) ("[T]he application of an exemption under the [FLSA] is a matter of affirmative
defense on which the employer has the burden of proof.").

Because the NYLL's overtime provisions mirror and/or expressly adopt the federal wage
law, district courts within the Second Circuit evaluate New York's executive exemption by
reference to the FLSA and its attendant Regulations set forth in the Code of Federal Regulations.
*Zheng*, 355 F.3d at 78; *see also, Awan v. Durrani*, 14-cv-04562 (SIL), 2015 WL 4000139, at *9
(E.D.N.Y. July 1, 2015). The Second Circuit thus engages in a single analysis under the FLSA to
resolve both FLSA and NYLL exemption defenses. *See Ramos v. Baldor Specialty Foods, Inc.*,
687 F.3d 554, 556 FN 1 (2d Cir. 2012); *Zheng*, 355 F.3d at 78; *Awan*, 2015 WL 4000139, at *9;
*Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 519 (S.D.N.Y. 2013).

The FLSA executive exemption includes "any employee employed in a bona fide executive
… capacity." 29 U.S.C. § 213(a)(1). The United States Department of Labor ("DOL") has defined
"employee employed in a bona fide executive capacity" to mean any employee: (1) who is

29

compensated on a salary basis at a rate of not less than $455.00 per week;[140] (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. *Elghourab v. Vista JFK, LLC*, 17-cv-00911 (ARR)(ST), 2019 WL 2431905, at *7 (E.D.N.Y. June 11, 2019), *aff'd*, 818 F. App'x 63 (2d Cir. 2020) (citing 29 C.F.R. § 541.100(a)). The determination of whether an employee is an exempt executive employee "focuses on evidence regarding the actual day-to-day activities of the employee rather than more general job descriptions contained in resumes, position descriptions, and performance evaluations[.]" *See Jibowu v. Target Corporation*, 492 F. Supp. 3d 87 (E.D.N.Y. Sept. 30, 2020) (quoting *Martinez*, 930 F. Supp. 2d at 525 fn.16). "The question of whether an employee falls under the executive exemption is a mixed question of fact and law— *i.e.*, how the employee spent his time working is a question of fact, while whether the employee's activities exclude him from overtime benefits is a question of law." *Elghourab*, 2019 WL 2431905, at *7 (citing *Ramos*, 687 F.3d at 558).

### 1.     Salary Basis Test

To be properly classified as exempt, an employee must be compensated on a salary basis or fee basis at a rate of not less than [$455.00] per week. 29 C.F.R. § 541.100(a)(1). Under the Federal Regulations: "An employee will be considered to be paid on a 'salary basis' … if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to

---

[140] The salary threshold has since been increased from $455.00 per week to $684.00 per week effective January 1, 2020. 29 C.F.R. § 541 (as amended).

reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). Even if the employee receives more than $455.00 per week, if there is no evidence that the employee was *guaranteed* that amount, he does not meet the salary basis test. *See Padilla v. Sheldon Rabin, M.D., P.C.*, 176 F. Supp. 3d 290 (E.D.N.Y. Apr. 6, 2016) (finding that although the plaintiff received more than $455.00 per week during the time he worked for Defendant, plaintiff did not have a guaranteed weekly minimum and was not paid a predetermined sum representing part or all of his compensation).

Here, Defendants have not submitted any evidence that Plaintiff was *guaranteed* a minimum weekly salary of $455.00. For Plaintiff's first period of employment, there are no records at all indicating the total amount he received each week because Defendants only provided him with receipts for the check portion of his wages. For his second employment period, the payroll records (Exhibits 5 and 6) actually demonstrate that Plaintiff's wages varied greatly on a week over week basis because he was paid based on the number of days he worked and the number of evening and Saturday hours he worked. These records also demonstrate that when Plaintiff worked less than five (5) weekdays in a week, his pay was reduced accordingly. For example, Plaintiff's time records reflect that during the week of February 1, 2016 through February 7, 2016, he worked full days on Monday through Thursday and a half day on Friday.[141] The next week, February 8, 2016 through February 14, 2016, the time records reflect that he worked full days on Monday through Wednesday, a half day on Thursday, and did not clock in on Friday.[142] Plaintiff's corresponding payroll records indicate that for the week of February 1, 2016 through February 7, 2016, he was paid his daily rate for 4.5 days (4.5 x 170 = $765.00).[143] Likewise, the payroll records

---

[141] *See* Ex. 4, Line Entries dated February 1, 2016 through February 5, 2016.
[142] *See* Ex. 4, Line Entries dated February 8, 2016 through February 11, 2016.
[143] Ex. 6, P0049; Ex. 11 at 82:5-84:12.

indicate that for the week of February 8, 2016 through February 14, 2016, he was paid his daily rate for 3.5 days (3.5 x 170 = $595.00, rounded to an even $600.00).[144]

Notably, Serhat Soykan admitted that Plaintiff was paid a daily rate in 2012-2013, and that he was an hourly rate employee in 2015-2018. Only after he was sued did Serhat Soykan contend that Plaintiff was an exempt executive.

Plaintiff clearly does not meet the salary basis test under the FLSA or the NYLL for either of his two (2) employment periods and, therefore, for this reason alone, Defendants' executive exemption defense must fail as a matter of law.

### 2. Management

The DOL regulations define "management" to include a range of activities, such as:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. The DOL Regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). They further provide that the determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. *Id.* The DOL

---

[144] Ex. 6, P0049; Ex. 11 at 82:5-84:12. Plaintiff testified that Defendants likely rounded his pay up to $600.00 this week. Ex. 11 at 84:5-9.

Regulations identify the following factors for such consideration: (1) the amount of time spent on exempt versus nonexempt work; (2) the employee's relative freedom from direct supervision; (3) the relative importance of the employee's exempt duties as compared with other types of duties; and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. *Id.*; *see also*, *Elghourab*, 2019 WL 2431905, at *8. In determining whether an individual's primary duty is managerial, district courts have held that consideration of these factors is a highly fact-intensive inquiry, "to be made on a case-by-case basis in light of the totality of the circumstances." *Clougher v. Home Depot, U.S.A., Inc.*, 696 F. Supp. 2d 285, 290 (E.D.N.Y. 2010) (quoting *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 908 (E.D. La. 2009)).

Here, Defendants did not submit any evidence to support their mistaken belief that Plaintiff was an exempt shop manager. Specifically, they have not submitted any evidence indicating (i) the managerial duties Plaintiff allegedly performed; (ii) the amount of time he allegedly performed managerial duties as opposed to non-exempt duties; (iii) the amount of time he spent working relatively free from direct supervision; (iv) the importance of his unidentified managerial tasks; or, (v) the amounts other employees were paid in comparison to the wages Plaintiff was paid. Defendants did not even call a single witness (of the many co-workers Plaintiff worked with) to testify about what Plaintiff did on a day-to-day basis at Allstate's workshop.[145] That is telling. Importantly, Serhat Soykan admitted that in 2012-2013, Plaintiff was not the shop manager. Defendants did produce a business card that was given to Plaintiff near the end of his employment that indicates he was a shop manager, but to the extent that a job description or job title does not

---

[145] Defendants did not admit any documents into evidence that even suggest Plaintiff performed managerial duties either.

accurately reflect the realities of the position, such evidence is not probative and should be disregarded by the Court. *See Elghourab*, 2019 WL 2431905, at *4, fn. 13 (citing to *Carhuapoma v. N.Y.-Presbyterian Healthcare Sys., Inc*., 11-cv-08670 (JPO)(RLE), 2013 WL 1285295, at *3 fn. 3 (S.D.N.Y. Mar. 29, 2013) ("A job description is probative evidence, but only to the extent that it reflects an employee's actual duties.")).

Conversely, Plaintiff testified at length about not performing managerial duties during trial. He affirmed that he did not hire or fire anyone, he did not participate in interviews, he never disciplined anyone, never trained anyone, never evaluated another employee's work performance, did not handle employee complaints or grievances, did not set or adjust employee wages, never apportioned or assigned work to other employees, was not responsible for maintaining production or sales records, was not responsible for providing for the safety and security of other employees, was not responsible for planning and controlling budgets, was not responsible for monitoring or implementing legal compliance measures, and was not responsible for planning or organizing work projects. Plaintiff credibly testified that he was not the shop manager, did not consider himself to be a shop manager, and was never referred to or introduced to anyone by Serhat Soykan as a shop manager.

The testimony overwhelming establishes that Plaintiff was a manual laborer who spent ninety-five percent (95%) of his time cutting, fabricating, polishing, and installing stone countertops. These are clearly his primary responsibilities, not the performance of unidentified and unsubstantiated managerial duties. Because Defendants have utterly failed to meet their burden to demonstrate that Plaintiff performed managerial duties as his primary duty, Defendants' executive exemption defense must fail as a matter of law.

### 3.     Directing the Work of Two or More Employees

The executive exemption test requires the exempt employee to "customarily and regularly

direct the work of two or more other employees." 29 C.F.R. § 541.100(a)(3). According to the DOL Regulations, "[t]he phrase 'customarily and regularly' means greater than occasional but less than constant; it includes work normally done every workweek, but does not include isolated or one-time tasks." *See* U.S. Dep't of Labor, Fact Sheet #17B: Exemption for Executive Employees Under the Fair Labor Standards Act (FLSA) (July 2008).

In the case at bar, Defendants have not offered any testimony or documentary evidence demonstrating that Plaintiff directed anyone's work. Plaintiff, on the other hand, credibly testified that he did not supervise anyone and that no one reported to him. For this reason, Defendants' executive exemption defense must fail as a matter of law.

### 4. Hiring and Firing or Recommendations Given Particular Weight

An exempt executive must have "the authority to hire or fire other employees," or, at the very least, the executive's "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees" must be given "particular weight." 29 C.F.R. § 541.100(a)(4).

Defendants unquestionably failed to meet its burden to demonstrate that Plaintiff was responsible for hiring and firing employees or that he provided recommendations as to the hiring, firing, promotion, or demotion of employees. Defendants did not provide any testimony on this issue, did not call any witnesses that were hired or fired by Plaintiff, and did not submit any documents indicating that Plaintiff hired or fired someone. Plaintiff, in fact, did not have authority to hire or fire anyone, did not participate in interviews, and was never asked for his opinion as to whether someone should be hired, fired, promoted, or demoted.

For these reasons, Defendants' executive exemption defense must fail as a matter of law.

G.      **Failure to Pay Regular Wages under the NYLL**

The NYLL requires employers to pay manual workers no later than seven (7) days after the end of the week in which the wages are earned, and if employment is terminated, no later than the regular payday for the pay period. *Tacuri v. Nithin Constr. Co.*, 14-cv-02908 (CBA)(RER), 2015 WL 790060, at *4 (E.D.N.Y. Feb. 24, 2015) (citing N.Y. Lab. Law § 191(1)); *see also, Vega v. K & C Interior Constr. Corp.*, 18-cv-00182 (ARR)(RER), 2018 WL 4376486, at *6 (E.D.N.Y. Aug. 28, 2018), *report and recommendation adopted*, 18-cv-00182 (ARR)(RER), 2018 WL 4374911 (E.D.N.Y. Sept. 13, 2018); N.Y. Lab. Law § 191(3). Employees are entitled to recover such unpaid wages. *Vega*, 2018 WL 4376486, at *3 (citing 12 N.Y.C.R.R. § 142-2.2; N.Y. Lab. Law § 198).

Here, the undisputed evidence at trial establishes that Defendants violated the regular wage provisions of the NYLL by failing to pay Plaintiff the full amount of his wages. In particular, Defendants gave Plaintiff payroll checks that did not clear because Allstate's account did not have sufficient funds. Plaintiff incurred fees associated with those bounced checks. Defendants never reimbursed Plaintiff for the checks or the fees, effectively depriving him of his hard-earned wages. Defendants also failed to pay Plaintiff the cash portion of his wages for each of the final ten (10) weeks of his employment in 2018. Lastly, Defendants refused to pay Plaintiff any wages for the final ten (10) days of his employment. Defendants did not submit any evidence at trial to contradict either Plaintiff's testimony or his documentary evidence. Accordingly, Plaintiff has met his burden of proof to establish his regular wage claims.

H.      **Failure to Provide Wage Notices and Wage Statements under the NYLL**

1.      **Wage Notice Requirements under NYLL Section 195(1)**

The Wage Theft Prevention Act ("WTPA") requires employers to provide a wage notice to an employee at the time of hiring. N.Y. Lab. Law § 195(1)(a). Prior to February 27, 2015, the

WTPA entitled a plaintiff to $50.00 for each work week that the violations occurred or continue to occur, but not to exceed a total of $2,500.00. N.Y. Lab. Law § 198(1-b), eff. April 9, 2011 to February 26, 2015. Since February 27, 2015, the WTPA has entitled a plaintiff to $50.00 for each workday that a wage notice violation occurs, not to exceed $5,000.00. N.Y. Lab. Law § 198(1-b); s*ee also*, *Chen v. New Fresco Tortillas Taco LLC*, 15-cv-02158 (RA)(AJP), 2015 WL 5710320, at *8 (S.D.N.Y. Sept. 25, 2015).

### 2.        Wage Statement Requirements under NYLL Section 195(3)

The WTPA also requires employers to provide employees a wage statement (or pay stub) with every payment of wages. N.Y. Lab. Law § 195(3). Prior to February 27, 2015, the WTPA entitled a plaintiff to $100.00 for each workweek that the violations occurred or continue to occur, but not to exceed a total of $2,500.00. N.Y. Lab. Law § 198(1-d), eff. April 9, 2011 to February 26, 2015. Since February 27, 2015, the WTPA has entitled a plaintiff to $250 for each workday that the violation occurred, not to exceed $5,000. *See* N.Y. Lab. Law § 198(1-d); s*ee also*, *Chen*, 2015 WL 5710320 at *7.

### 3.        Defendants' Recordkeeping Violations

In the case at bar, Defendants have conceded these claims for wage notice and wage statement violations at trial.[146] Accordingly, Plaintiff is entitled to damages for Defendants' admitted failure to provide him with a wage notice at the time he was hired in mid-November 2012 and again in April 2015, and for their failure to provide complete and accurate paystubs along with Plaintiff's weekly wages. A calculation of Plaintiff's wage notice and wage statement damages are detailed in his accompanying Calculation of Damages. Of particular importance, because Plaintiff

---

[146] *See* Ex. 11 at 99:6-100:3.

was employed during two (2) separate and distinct time periods, Plaintiff seeks recordkeeping damages stemming from both employment periods.

## I.     The Individual Defendants Are Personally Liable under the FLSA and the NYLL

"A corporate officer with operational control of a corporation's covered enterprise is an employer, along with the corporation, jointly and severally liable" for unpaid wages under the FLSA. *Donovan*, 712 F.2d at 1511. "An employer may include an individual owner who exercises a sufficient level of operational control in the company's employment of employees." *Id.* . "In determining whether an individual is an employer, courts consider the same factors that apply to corporations, namely 'whether the individual: (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Khurana v. JMP USA, Inc.*, 14-cv-04448 (SIL), 2017 WL 1251102, at *9 (E.D.N.Y. Apr. 5, 2017) (citing *Kalloo v. Unlimited Mech. Co. of NY, Inc.,* 977 F. Supp. 2d 187, 201 (E.D.N.Y. 2013)). "Employer status does not require continuous monitoring or total control of an employee." *Bozdogan*, 2022 WL 4273851, at *7 (citing *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 315 (E.D.N.Y. 2009).

Here, it is unquestionably clear that the individual Defendants, Serhat Soykan and Deniz Soykan, meet the definition of "employer" as defined under the FLSA and the NYLL. The evidence produced at trial demonstrates that the individual Defendants were owners of Allstate, each had substantial control over its day-to-day operations, and each exercised control over the employment relationship between Allstate and Plaintiff. Serhat Soykan formed Allstate, was its President, and was the individual who was ultimately in charge of everyone who worked for Allstate. He reviewed and signed the corporate income tax returns, was a signatory to the Allstate checking account, and was in charge of Allstate's payroll. He determined the manner and amounts

each employee was paid, hired and fired employees, determined the shop hours and the employees' work schedules, directed the employees' job responsibilities, and disciplined employees, including as to Plaintiff. Likewise, Deniz Soykan managed Allstate's showroom, managed the shop employees when Serhat Soykan was not present, monitored the shop employees on camera from the showroom, directed the shop employees' job duties, participated in the hiring and firing process, including conducting job interviews, participated in Allstate's payroll process, including maintaining employment records related to how the employees were paid, and calculated and paid the employees their wages, including as to Plaintiff. And it was Deniz Soykan who fired Plaintiff in 2018, to which Serhat Soykan explained to Plaintiff he could not do anything about to change her decision.

These facts undoubtedly support the individual Defendants personally liability for the wage and hour violations of Allstate and, therefore, they should be held jointly and severally liable.

## J.      Plaintiff Is Entitled to Liquidated Damages under the NYLL

"Under the FLSA, an employer may be liable for liquidated damages 'in an additional equal amount' to the amount owed for unpaid overtime compensation." *Begum v. Ariba Discount, Inc.*, 12-cv-06620 (DLC), 2015 WL 223780, at *2 (S.D.N.Y. Jan. 16, 2015) (quoting 29 U.S.C. § 216(b)). FLSA liquidated damages are compensatory in nature and "constitute compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Cesario v. BNI Constr., Inc.*, 07-cv-08545 (LLS)(GWG), 2008 WL 5210209, at *5 (S.D.N.Y. Dec. 15, 2008) (internal quotations omitted). The FLSA provides that liquidated damages may be avoided, in the court's discretion, "if the employer 'shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation' of the FLSA." *Id.* at *5 (quoting 29 U.S.C. § 260). Under 29 U.S.C. § 260, the employer

bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness. *Id.* (internal citations and quotations omitted). "'Good faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA, and then move to comply with them." *Elghourab*, 2019 WL 2431905, at *11 (quoting *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)). Notably, the employer carries a heavy burden that is difficult to meet and "[d]ouble damages are the norm, single damages the exception." *Cesario*, 2008 WL 5210209, at *5.

The NYLL also provides for additional recovery in the form of liquidated damages for unpaid overtime compensation and regular wages. Employees may recover liquidated damages equal to 100% of the total unpaid wages owed, unless "the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1-a). Under the NYLL, "liquidated damages are presumed unless defendants can show subjective good faith." *Fermin*, 93 F. Supp. 3d at 47 (quoting *Zubair v. EnTech Eng'g, P.C.*, 900 F. Supp. 2d 355, 360, fn. 3 (S.D.N.Y. 2012)).

Employees are not entitled to an award of cumulative liquidated damages for unpaid wages under both the FLSA and the NYLL. *See, e.g.*, *Granados v. Traffic Bar & Rest.*, 13-cv-00500 (TPG)(JCF), 2016 WL 7410725, at *5 (S.D.N.Y. Dec. 21, 2016); *Garcia-Devargas v. Maino*, 15-cv-02285 (GBD)(JLC), 2017 WL 129123, at *9, fn. 10 (S.D.N.Y. Jan. 13, 2017) (*report and recommendation*). Instead, a plaintiff may recover "under the statute that provides the greatest relief." *Castillo v. RV Transp., Inc.*, 15-cv-00527 (LGS), 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016); *see also Morales v. Mw Bronx, Inc.*, 15-cv-06296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016) (courts awarding damages under only one statute "apply whichever ...

statute results in the higher award for the plaintiff").

Here, Defendants' wage violations were willful, and they did not demonstrate that their violations were done in good faith and that they had reasonable grounds for believing that their failure to pay overtime and regular wages to Plaintiff was not a violation of the FLSA and the NYLL. Serhat Soykan admitted that he never did any research into the FLSA or the NYLL to determine what responsibilities Allstate had with respect to paying its employees overtime compensation. He did not know what a wage notice was, and was unaware that he was required by law to provide Plaintiff accurate paystubs. This is evident in the fact that Defendants knowingly fabricated false payroll records that did not truthfully reflect the hours Plaintiff worked or the wages he was paid each week.

Accordingly, Plaintiff is entitled to 100% liquidated damages on his unpaid overtime claims and unpaid regular wage claims. Importantly, Plaintiff requests that he be awarded liquidated damages solely under the NYLL, rather than the FLSA, as it results in the higher award and greatest relief because he will also be able to recover pre-judgment interest throughout the entire NYLL statutory period, as discussed *infra. See Hernandez v. Bella Notte of Syosset Inc.*, 22-cv-01647 (JMA)(AYS), 2022 WL 3912574, at *6 (E.D.N.Y. Aug. 31, 2022) (granting Plaintiffs' request to award liquidated damages solely under the NYLL so as to recover pre-judgment interest under New York law).

### K.    Plaintiff Is Entitled to Pre- and Post-Judgment Interest

In contrast to the FLSA, the NYLL permits the award of both liquidated damages and pre-judgment interest. *Elghourab*, 2019 WL 2431905, at *12; *Khurana*, 2017 WL 1251102, at *17; *Fermin*, 93 F. Supp. 3d at 48. Moreover, the availability of both NYLL liquidated damages and pre-judgment interest "remains true even where liability is found not only under the NYLL but also under the FLSA." *Begum*, 2015 WL 223780 at *3 (citing *Thomas v. iStar Fin., Inc.*, 652 F.3d

141, 150, fn. 7 (2d Cir. 2011)). However, courts do not award statutory prejudgment interest on any portion of a plaintiff's recovery for which liquidated damages were awarded under the FLSA. *Tackie v. Keff Enterprises LLC*, 14-cv-02074 (JPO), 2014 WL 4626229, at *5 (S.D.N.Y. Sept. 16, 2014). For these reasons, Plaintiff requests that this Court award him liquidated damages solely under the NYLL so that he may also recover pre-judgment interest on his compensatory damages.

Under New York law, a prevailing employee is entitled to pre-judgment interest at a rate of 9% per year for a NYLL claim. *See* N.Y. C.P.L.R. §§ 5001, 5004. Courts applying CPLR Section 5001 have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994). Where, as here, "unpaid wages 'were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all damages from a single reasonable intermediate date.'" *Hernandez*, 2022 WL 3912574, at *6; *Maldonado v. La Nueva Rampa, Inc.*, 10-cv-08195 (LLS)(JLC), 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012) (quoting N.Y. C.P.L.R. § 5001(b)). District courts in the Second Circuit have found that a single reasonable intermediate date is the median date between the earliest and latest dates within the six-year limitations period that a plaintiff's NYLL claim accrued. *See Hernandez v. NJK Contractors, Inc.*, 09-cv-04812 (RER), 2015 WL 1966355, at *51 (E.D.N.Y. May 1, 2015) (finding that a single reasonable intermediate date is the median date between the earliest and latest dates each of the plaintiffs' NYLL claims accrued); *Coulibaly v. Millennium Super Car Wash, Inc.*, 12-cv-04760 (CBA)(CLP), 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013) (using the midpoint of the plaintiff's NYLL overtime claims to calculate pre-judgment interest).

Additionally, because this case is being litigated in a federal District Court, if Plaintiff is a prevailing party, he will be entitled to post-judgment interest pursuant to 28 U.S.C. § 1961, which

applies to "any money judgment in a civil case recovered in a district court." *Khurana*, 2017 WL 1251102 at *17 (citing 28 U.S.C. § 1961). Plaintiff, therefore, will be entitled to recover post-judgment interest at the statutorily prescribed federal rate. *See* 28 U.S.C. § 1961(a)-(b).

**L.      Plaintiff Will Be Entitled to an Automatic Fifteen Percent (15%) Increase with Respect to Any Damages Not Paid within the Later of Ninety (90) Days Following the Issuance of Judgment or the Expiration of the Time to Appeal Pursuant to the under the NYLL**

Pursuant to the NYLL, "any judgment or court order awarding remedies under [Section 198] shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." N.Y. Lab. Law § 198(4); N.Y. Lab. Law § 663(4); *Hernandez*, 2022 WL 3912574, at *6 (citations omitted). As such, if Defendant fails to satisfy a judgment, if any, rendered within the time periods enumerated in NYLL Sections 198(4) and 663(4), Plaintiff shall be entitled to an automatic fifteen percent (15%) increase in the amount of damages owed to him.

**M.      Plaintiff Will Be Entitled to Reasonable Attorneys' Fees and Costs**

Under both the FLSA and the NYLL, an employee is entitled to reasonable attorneys' fees and the costs of the action should (s)he be a prevailing party. 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). Plaintiff will respectfully request the opportunity to make a motion for attorneys' fees and costs if it is determined by the Court that he is entitled to damages.

**IV.      CONCLUSION**

Plaintiff has met his burden to demonstrate that he regularly worked more than forty (40) hours a week without Defendants paying him overtime compensation, as required by the FLSA and the NYLL. He also met his burden to establish that Defendants failed to pay him regular wages and provide him with wage notices and statements, as required by the NYLL. Defendants, on the

other hand, were wholly uncredible; they completely failed to establish their executive exemption defense or that their violations were somehow based on a good faith belief that they were complying with the applicable wage and hour laws. Accordingly, for all the reasons stated herein, Plaintiff respectfully requests that the Court award him Judgment in his favor and against Defendants, jointly and severally, in the following amounts: (1) unpaid overtime compensation, $31,062.71; (2) unpaid regular wages, $8,104.63; (3) liquidated damages, $39,167.34; (4) NYLL 195(1) wage notice penalties; $7,200.00; (5) NYLL 195(3) wage statement penalties; $7,500.00; (6) pre-judgment interest pursuant to the N.Y. C.P.L.R.; (7) post-judgment interest; (8) reasonable attorneys' fees and costs, to be determined in a separate application; and, (9) any further relief that this Court deems just and reasonable.

SO ORDERED.

Dated: Brooklyn, New York          /s/ LDH_____
      November 30, 2023          LaSHANN DeARCY HALL
                                 United States District Judge